1

2

3

4

5

6

7                    **IN THE UNITED STATES DISTRICT COURT**

8                **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   ROLLAND C. HANLEY,                         CASE NO. 1:06 CV 01389 OWW DLB PC

11                    Plaintiff,                _____  ORDER REQUIRING PLAINTIFF TO FILE
                                                AMENDED COMPLAINTS OR NOTIFY
12       vs.                                    COURT OF WILLINGNESS TO PROCEED
                                                ONLY ON COGNIZABLE EXCESSIVE FORCE
13                                              CLAIM WITHIN THIRTY DAYS
     MERCED COUNTY SHERIFF'S
14   DEPARTMENT,

15                    Defendants.

16   _____/

17   I.   Screening Order

18          A.       Screening Requirement

19          Plaintiff Rolland C. Hanely ("plaintiff") is a state prisoner proceeding pro se and in forma

20   pauperis in a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint in this action

21   on October 10, 2006. The plaintiff filed an amended complaint on January 16, 2007.

22          The court is required to screen complaints brought by prisoners seeking relief against a

23   governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court

24   must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous

25   or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief

26   from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any

27   filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time

28   if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be

                                                    1

1   granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

2          A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which

3   relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the

4   claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984),

5   citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners

6   Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a complaint under this standard, the court must

7   accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees,

8   425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve

9   all doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  "The issue is not

10  whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in

11  support of the claims.  Indeed, it may appear on the face of the pleadings that a recovery is very remote

12  and unlikely but that is not the test."  Jackson v. Carey, 353 F. 3d 750, 755 (9th Cir. 2003) (quoting

13  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also, Austin v. Terhune, 367 F. 3d 1167, 1171 (9th

14  Cir. 2004) ("Pleadings need suffice only to put the opposing party on notice of the claim ... (quoting

15  Fontana v. Haskin, 262 F. 3d 871, 977 (9th Cir. 2001))).  However, "the liberal pleading standard ...

16  applies only to plaintiff's factual allegations."  Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989).  "[A]

17  liberal interpretation of a civil rights compliant my not supply essential elements of the claim that were

18  not initially pled."  Bruns v. Nat'l Credit Union Admin., 122 F. 3d 1251, 1257 (quoting Ivey v. Bd. of

19  Regents, 673 F 2d 266, 268 (9th Cir. 1982)).

20  II.      Summary of the Plaintiff's Amended Compliant

21         The events at issue allegedly occurred on July 9, 2006, at the John Latorraca Correctional Facility

22  where the plaintiff was incarcerated.  Since the time of the incident, plaintiff has been transferred and is

23  currently incarcerated at Atascadero State hospital in Atascadero, California.  Plaintiff names the Merced

24  County Sheriff's Department as defendants.  Specifically, he names Merced County Sheriff Gary Carlson

25  and Merced County Sheriff Deputy Arroyo as defendants.  The plaintiff is seeking compensatory and

26  punitive damages, attorney fees, and costs. The plaintiff is also seeking injunctive relief.   Specifically,

27  the plaintiff requests that defendant Arroyo be transferred from the John Latorraca Correctional Facility

28  so that when the plaintiff returns, defendant Arroyo will not be in a position of authority over the plaintiff.

2

1   Because plaintiff is no longer incarcerated at the prison at which the events giving rise to his claims

2   occurred, plaintiff's claims for injunctive relief are moot and this action shall be treated as one for

3   damages only.  Nelson v. Heiss, 271 F.3d 891, 897 (9th Cir. 2001); Dilley v. Gunn, 64 F.3d 1365, 1368

4   (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).

5         Plaintiff alleges three claims against the defendants : 1) a violation of his First Amendment right

6   to the free exercise of religion, 2) a violation of his Eighth Amendment right to be free from excessive

7   force, and 3) a violation of his Eighth Amendment right to have personal safety.  The defendant's second

8   and third claim are both violations of the Eighth Amendment.  Accordingly, the court will consider these

9   claims together.

10        In his complaint, the plaintiff alleges that, on July 9, 2006, defendant Arroyo ordered that plaintiff

11  remove a cross necklace hanging around his neck.  Defendant Arroyo made this request despite the fact

12  that supervisory officials had given plaintiff and other inmates  permission to wear the necklaces.   After

13  the plaintiff removed the necklace, he alleges that defendant Arroyo ordered other inmates to move out

14  of the way so that defendant Arroyo could tazer the plaintiff.  Defendant Arroyo also ordered that the

15  plaintiff be taken to lock-up because of his religious beliefs. While walking to lock-up, plaintiff alleges

16  that defendant Arroyo hit the plaintiff in the back of his neck knocking him eight feet forward.  Defendant

17  Arroyo also ripped off the plaintiff's shirt, used  abusive language,  and pushed and shoved the plaintiff

18  while he attempted to put his shower thongs back on.  Plaintiff alleges that defendant Arroyo's actions

19  resulted in two puncture wounds to his neck.  Defendant Arroyo took the plaintiff to an unsanitary shower

20  and left him there while he was bleeding.  The plaintiff subsequently received medical treatment for his

21  injuries by other prison officials.

22  III.  Freedom of Religion

23        The First Amendment to the United States Constitution provides that Congress shall make no law

24  respecting the establishment of religion, or prohibiting the free exercise thereof.  U.S. Const., amend. I.

25  The United States Supreme Court has held that prisoners retain their First Amendment rights, including

26  the right to free exercise of religion.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  The Court

27  has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of

28  incarceration and from valid penological objectives.  Id.; McElyea v. Babbit, 833 F. 2d 196, 197 (9th Cir.

1  1987).

2          Prison regulations alleged to infringe on the religious exercise right must be evaluated under the

3  "reasonableness" test set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). O'Lone, 382 U.S. at 349;

4  Freeman v. Arpaio,125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's

5  recent decision in City of Boerne v. P.F. Flores, 521 U.S. 507 (1997), invalidated the Religious Freedom

6  Restoration Act and restored the "reasonableness test" as the applicable standard in free exercise

7  challenges brought by prison inmates).

8          In determining the reasonableness of a challenged restriction on First Amendment rights, the court

9  considers four factors.  First, there must be a valid, rational connection between the prison regulation and

10 the legitimate government interest put forward to justify it, and the governmental objective must itself

11 be a legitimate and neutral one.  A second consideration is whether alternative means of exercising the

12 right on which the regulation impinges remain open to prison inmates.  A third consideration is the impact

13 accommodation of the asserted right will have on guards, other inmates, and the allocation of prison

14 resources.  Finally, the absence of ready alternatives is evidence of the reasonableness of a prison

15 regulation.  Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987) (citing Turner v. Safley, 482 U.S. at 89-

16 91).

17          To prevail on a free exercise claim, an inmate must show that a defendant substantially burdened

18 the practice of his religion by preventing him from engaging in conduct mandated by his faith without

19 justification reasonably related to legitimate penological interests. "In order to establish a free exercise

20 violation, [plaintiff] must show the defendants burdened the practice of his religion by preventing him

21 from engaging in conduct mandated by his faith." Freeman, at 736.  The interference must be more than

22 an inconvenience; the burden must be substantial and interfere with a tenet or belief that is central to a

23 religious doctrine.  Freeman, at 737 (internal quotations and citations omitted).

24          Although the plaintiff alleges that he was not allowed to wear his cross, he has not adequately

25 plead the relationship between the challenged actions and the free exercise of religion.  For example, he

26 has not indicated what religion he practices, or what role wearing a cross plays in that religion.  He also

27 alleges that other prisoners were allowed to wear the cross necklaces when he was not allowed to do so.

28 However, it is not clear whether all of the prisoners belong to the same religion or what relationship if

4

1  any they have with the plaintiff.   Accordingly, he has not alleged enough facts to give rise to a freedom

2  of religion claim.

3  IV.  Excessive Use of Force

4          When a prison official stands accused of using excessive physical force in violation of the cruel

5  and unusual punishment clause of the Eighth Amendment, the question turns on whether force was

6  applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the

7  purpose of causing harm.  Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley v. Albers, 475 U.S.

8  312, 320-21 (1986)).  In determining whether the use of force was wanton and unnecessary, it is proper

9  to consider factors such as the need for application of force, the relationship between the need and the

10  amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made

11  to temper the severity of the forceful response.  Hudson, 503 U.S. at 7.  The extent of a prisoner's injury

12  is also a factor that may suggest whether the use of force could plausibly have been thought necessary in

13  a particular situation.  Id.  Although the absence of serious injury is relevant to the Eighth Amendment

14  inquiry, it is not determinative.  Id.  That is, use of excessive physical force against a prisoner may

15  constitute cruel and unusual punishment even though the prisoner does not suffer serious injury.  Id. at

16  9.  Although an inmate need not have suffered serious injury to bring an excessive force claim against

17  a prison official, "[not] every malevolent touch by a prison guard gives rise to a federal cause of action.

18  Hudson, 503 U.S. at 9.  "Not every push or shove, even if it may later seem unnecessary in the peace of

19  a judge's chambers, violates a prisoner's constitutional rights."  Id. (citing Johnson v. Glick, 481 F.2d

20  1028, 1033 (2d Cir.)(cert. denied sub nom. Johnson, 414 U.S. 1033 (1973)).  The Eighth Amendment's

21  prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition de

22  minimus uses of physical force. Id. at 9-10.

23          Plaintiff alleges that defendant Arroyo attempted to tazer and hit the plaintiff which resulted in

24  the plaintiff suffering two neck wounds.  Under federal notice pleading standards, plaintiff's allegations

25  are sufficient to state a claim against defendant Arroyo.  Fed. R. Civ. P. 8(a); Swierkiewicz v. Sorema

26  N. A., 534 U.S. 506, 512-15 (2002); Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004); Jackson

27  v. Carey, 353 F.3d 750, 754 (9th Cir. 2003); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-26

28

1  (9th Cir. 2002).

2  V.    Supervisory Liability Claim

3          Under section 1983, liability may not be imposed on supervisory personnel for the actions of their

4  employees under a theory of respondeat superior.  When the named defendant holds a supervisorial

5  position, the causal link between the defendant and the claimed constitutional violation must be

6  specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589

7  F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under section

8  1983 for supervisory liability, plaintiff must allege some facts indicating that the defendant either:

9  personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed

10 to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a

11 repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen

12 v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040,

13 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be alleged to

14 support claims under section 1983.  See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168

15 (1993).

16

17         Although plaintiff names Sheriff Gary Carlson, plaintiff has not alleged any facts that give rise

18 to a claim for relief under section 1983 against him.  Plaintiff alleges that Gary Carlson implemented an

19 unconscionable policy because defendant Carlson knew that the defendant Arroyo was capable of hitting

20 the plaintiff and allowed defendant Arroyo to remain in his position of  authority.  However,  the

21 complaint is devoid of allegations upon which a supervisory liability claim may be based against

22 defendant Sheriff Gary Carlson.  Accordingly, plaintiff fails to state a claim against Sheriff Gary Carlson.

23         VI.    Conclusion

24         Plaintiff's complaint states a claim for monetary relief against defendant Arroyo for violating the

25 Eighth Amendment through use of excessive physical force.  However, plaintiff's complaint does not

26 state any other claims upon which relief may be granted under section 1983 or against defendant Gary

27 Carlson.  The court will provide plaintiff the opportunity to file an amended complaint to address the

28

6

other claims.  If plaintiff does not wish to file an amended complaint and wishes to proceed against defendant Arroyo on his excessive force claim only, plaintiff may notify the court in writing.  If plaintiff determines only to proceed on the excessive force claim, the court will then issue Findings and Recommendations ordering that the remaining claims be dismissed from the this action, and will forward plaintiff one summons and one USM-285 form to fill out and return to the court.  Upon receipt of these documents, the court will direct the United States Marshal to initiate service of process on defendant Arroyo.

It is also noted that the defendant indicated that the true names of the defendants had not yet been ascertained at the time the amended complaint was filed.  If the names are not correct, plaintiff  must correctly identify the defendants on an amended complaint.  In the event that the plaintiff wishes to amend his complaint, plaintiff is advised that Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a  general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate the defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith." Freeman, at 736.  The interference must be more than an inconvenience; the burden must be substantial and interfere with a tenet or belief that is central to religious doctrine.  Freeman, at 737 (internal quotations and citations omitted).  The complaint must also demonstrate how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is one affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F. 2d 164, 176 (9th Cir. 1980); Johnson v. Duffy, 588 F. 2d 740, 743 (9th Cir. 1978).

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send plaintiff a civil rights complaint form;

7

2.     Within **thirty (30) days** from the date of service of this order, plaintiff must either:

      a.     File an amended complaint curing the deficiencies identified by the court in this order, or

      b.     Notify the court in writing that he does not wish to file an amended complaint and wishes to proceed only against defendant Arroyo on his excessive force claim; and

3.     If plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.


IT IS SO ORDERED.

Dated:   <u>**May 2, 2007**</u>          <u>        /s/ **Dennis L. Beck**        </u>
                                          UNITED STATES MAGISTRATE JUDGE

8